# SECKERSON v. SINCLAIR.

## (140 N. W. 239.)

**Action for damages — fire — negligence — pleading.**

1. In an action to recover damages for injuries occasioned by a fire alleged in one count of the complaint to have been negligently set by the defendant, and in another to have been negligently allowed by him to spread from his land to that of the plaintiff, it is not error in the trial court to refuse to exclude evidence under the complaint on a motion made upon the trial, on the ground that the said complaint "nowhere described any land belonging to the defendant upon which it was alleged that the fire escaped or spread."

**Witness — testifying to results — evidence — conclusions.**

2. Where a witness gives the results of what he saw, his testimony is not objectionable on the ground that it is a conclusion rather than a statement of facts.

**Evidence of value — owner of property — worth — foundation.**

3. It is not error to allow the owner of farm machinery and of household furniture destroyed in a fire, to testify in answer to the question, "What was the furniture worth?" even though no foundation was laid for such testimony except the fact of ownership.

**Testimony — admission of — error — damages — instructions.**

4. Where plaintiff sued to recover damages for loss of farm machinery and household furniture destroyed by fire, and the court erroneously allowed testimony to be introduced as to "the difference in the value of the land for growing grass of a certain character testified to after the fire had passed over it, compared to what it was just before the fire," but in his instructions to the jury plainly and clearly told such jury not to regard any such testimony, or to allow any damages whatsoever for the injury to such grass or to the growing capacity of the land, the introduction of such testimony is deemed cured by the instruction, and not prejudicial.

**Evidence — value of property — time and place.**

5. It was not error to allow a carpenter and builder, who had been in the general carpentering and building business for nineteen years in a city within 20 miles of a country district, to testify as to the general value and

Note. —As to liability for setting fires which spread to property of others, see notes in 21 L.R.A. 25, and 36 L.R.A.(N.S.) 194.

As to duty of one not responsible for kindling of fire to prevent its spread from his premises, see note in 6 L.R.A.(N.S.) 882.

24 N. D.—40.

cost of building materials and labor connected therewith in relation to the construction of buildings in such district.

**Evidence — hypothetical questions — foundation for.**

6. The plaintiff in chief testified that the barn "was 32 by 40 feet, 10-inch ship-lap. It was a 7-foot barn, and raised up 9 feet in front, and the roof was ship-lap, and in the northeast corner I had it partitioned off for a granary about 10 feet square in the northeast corner of the barn." A hypothetical question was asked of a witness as follows: "Now, referring to the barn described by Mr. Seckerson, applying your knowledge of going prices of lumber in March, 1910, your knowledge of the cost of carpenter work and of building material generally at that time, what was the value of a barn 32 feet by 40 feet, sided with 10-inch ship-lap, ship-lap roof, with a granary 16 feet by 16 feet within it in one corner, floored?" This question was objected to on the ground that it did not refer to the building in question, nor to the time set out in the pleading. *Held,* that there was no error in permitting such question to be answered.

**Hypothetical questions — basis for — variation — specific objection.**

7. Where a hypothetical question is based upon testimony formerly admitted, and substantially and in general conforms to such testimony, but is objected to on the ground that in some particulars it varies therefrom, the particulars of such variation should be pointed out by the objector, and an objection that it is incompetent, irrelevant, and immaterial, or that it does not describe the building set out in the complaint, is not sufficient. Especially is this the case where the variance, if any, could have been pointed out and the error cured on cross-examination.

**Instructions to jury — tort action — interest on recovery — allowance of — discretionary — objection on appeal from judgment.**

8. A charge which instructs the jury that "if you find in favor of the plaintiff, then you should fix his damages at such sum as you find from the evidence he is entitled to receive as the value of the property so destroyed, and for interest on such amount," is *held* to be erroneous and improperly given, as in a tort action the allowance of interest is discretionary, and not obligatory upon the jury. Such objection may be raised on an appeal from the judgment, even though not urged on a motion for a new trial.

9. Various instructions examined, and *held* to be substantially correct.

Various proposed instructions also examined, and *held* not to have been improperly excluded.

Opinion filed February 10, 1913. Rehearing denied March 5, 1913.

Appeal from the District Court for Stutsman County, *Coffey,* J.

Action to recover damages for the destruction of property in a fire

alleged to have been set and allowed to escape through the negligence of the defendant. Verdict and judgment for the plaintiff. Defendant appeals.

Affirmed upon condition.

*Knauf & Knauf,* for appellant.

Where the complaint fails to state facts constituting a cause of action, advantage may be taken by objection to the admission of any evidence at the opening of trial, and where such objection on specific grounds is made, it is error to receive any evidence. James River Nat. Bank v. Purchase, 9 N. D. 281, 83 N. W. 7.

The rule of damages to land by fire is the difference found by the jury in the value of the land before and after the fire. Cleveland School Dist. v. Great Northern R. Co. 20 N. D. 124, 28 L.R.A. (N.S.) 757, 126 N. W. 995.

One must have knowledge of the prices at the place where the property is destroyed, and such knowledge must appear, in order to entitle an expert to give opinion as to values. Santa Cruz v. Enright, 95 Cal. 105, 30 Pac. 197; San Diego Land & Town Co. v. Neale, 88 Cal. 50, 11 L.R.A. 604, 25 Pac. 977; Jones v. Mechanics' F. Ins. Co. 36 N. J. L. 29, 13 Am. Rep. 405.

Expert opinion evidence must be based upon full information as to the ascertained or supposed facts, and not upon recollection. Guiterman v. Liverpool, N. Y. & P. S. S. Co. 83 N. Y. 358.

Questions seeking opinion evidence as to values or prices must conform to the date of damage or loss. Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130; Aultman Co. v. Ferguson, 8 S. D. 458, 66 N. W. 1081.

In tort actions the awarding of interest on amount recovered is discretionary with the jury, and the court shall so charge. Rev. Codes, § 6560; Johnson v. Northern P. R. Co. 1 N. D. 354, 48 N. W. 227.

The court should instruct upon every material point arising in the case. Rev. Codes, § 7021; Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1.

*Carr & Kneeland* and *S. E. Ellsworth,* for respondent.

Failure to comply with an order made upon plaintiff's motion to dismiss appeal, allowing certain time to defendant and appellant in which to file undertaking for costs, and conditioned that, upon his failure, the appeal should be dismissed, operates as a dismissal of the appeal.

BRUCE, J.  This is an appeal from a judgment of the district court of Stutsman county for $1,528.73 and interest thereon, from the time of the injury, in all $1,664, for damages occasioned by a fire alleged in one account of the complaint to have been negligently set by the defendant, and in another to have been negligently allowed by him to spread from his land to that of the plaintiff.

There is no merit in appellant's first contention that the court erred in permitting the introduction of evidence under the complaint after objection made by the defendant on the trial.  The reason given for the motion to exclude was that the complaint "nowhere described any land belonging to the defendant upon which it was alleged that the fire escaped or spread."  Such allegation was not necessary.  The basic and material fact which alone needs to be pleaded under the Code (see § 6852, Rev. Codes, 1905) was the fact that defendant negligently started a fire, or negligently allowed a fire to spread from his land, and that such fire was the proximate cause of the injuries complained of.  The description of the land could, at most, be a matter of evidence.  So, too, the objection made was made at the trial, and not by a motion to make more definite and certain.  Even if it had merit, it was too late.

Nor did the court err in refusing to strike out the answer of the witness Seckerson to the question: "Did you follow these traces (of fire) carefully for the purpose of determining where that fire originated?"  The objection was based on the assumption that the question called for a conclusion of the witness.  This, however, was only the case in so far as the word "carefully" was concerned, and, if erroneous in this respect, was clearly without prejudice.  It merely called, in the first place, for the simple answer of "yes" or "no."  The answer, as a whole, might possibly have been objected to on the ground that the witness went further, and, in addition to answering "yes," gave the facts of his examination; but the motion to strike out was not made upon this ground, but merely upon the ground that a conclusion was called for.  Nowhere, too, in the answer, did the witness give conclusions.  He stated merely the naked facts.  He stated what he saw.  "That the southeast quarter was not entirely burned over; that there was an indication of a strawpile,—you could see where the fire had come out of the remains or ashes of the strawpile.  There was more

than one of these piles, one flax and one spelts. They were both in ashes." etc. If, indeed, this answer can be taken as testimony as to conclusions rather than as to facts, there is no case where a person who testifies as to what he has seen or heard does not so testify.

Nor is there any merit in the objection to the questions propounded to and answered by the plaintiff Seckerson, as to the value of the household furniture which was admittedly destroyed. The first question was, "Do you know about what, in the aggregate, this household and kitchen furniture was worth at the time it was burned?" and was answered, "Yes, sir,—yes, very nearly. It was worth about $250 to $300. I had some tools and machinery burned in the fire. There was a five-horse hitch evener for a gang plow, and several other eveners and singletrees in the barn that were burned. They were worth ten to twelve dollars. The value was between ten and twelve dollars. I lost one truck wagon with a hayrack on, and one narrow-tired wagon running gear in the fire. I don't know how long it had been in use. I had bought them second-handed. The truck was worth $22, and the narrow-tired wagon was worth about $10." The objection made was that these questions called for a conclusion; that no foundation was laid; that they were not the proper measure of damages, and not admissible under the pleadings. In his brief counsel for appellant argues that the measure of damages for personal property destroyed is its reasonable market value in the nearest market at the time it was burned, and he urges that the question and answer should have related to the time of the burning, not to a year and three months later. We do not think the question is open to these objections. It is well established that the owner of personal property may himself testify as to its value without any other foundation being laid except as to his ownership and knowledge thereof. He need not qualify as an expert on values.

So, too, second-hand goods of the nature described can hardly be said to have a market value, and the rule as to such only requires a strict limitation as to the market values in cases where such values would be the fairest and the best measure of damages, and is ascertainable. What the law requires is certainty as far as possible, and an absence of speculation. It does not, however, require the impossible or the unreasonable. As far as the objection to the time is concerned, it is absolutely

without merit. The question was, "Do you know about what, in the aggregate, this household and kitchen furniture was worth *at the time it was burned?*" It clearly related to the time of the fire, and not to the time of the trial.

So, too, there is no merit in the contention that "the witness could not testify as to what he would take for it, what it is worth to him, or what it would have cost to replace it" (though the latter can often be shown where no proof of market value can be had). The question simply was, "What was the furniture worth?" It was not limited to the worth to the plaintiff, or to anyone else.

Exception is also taken to the allowance by the court, over the objection of the defendant, of certain testimony in regard to "the difference in the value of the land for growing grass of a certain character testified to after the fire had passed over it, compared to what it was just before the fire went over it," defendant contending that the true measure of damages in such cases is the value of the land before and after the fire. Cleveland School Dist. v. Great Northern R. Co. 20 N. D. 124, 28 L.R.A.(N.S.) 757, 126 N. W. 995. The admission of this testimony, however, even if erroneous, must have been without prejudice to the defendant, as the court, in its instructions to the jury, in three separate cases, emphatically instructed the jury not to pay any attention to such testimony, and that their verdict must be confined to the other articles enumerated in the complaint, all of which were buildings or personal property. We realize, of course, and defendant argues with great force, that certain errors cannot be cured by an instruction, and that there may be many cases where the courts have held that impressions made upon the minds of the jury can often not be overcome in this way. The cases cited, however, are chiefly those in which the introduction of the evidence was calculated to prejudice the jury against the defendant, and are not, as a rule, cases where a mere item of damages is testified to which the court has afterwards directed the jury to disregard. In one case, for instance (that of Chicago v. Wright & L. Oil & Lead Mfg. Co. 14 Ill. App. 119, 124), the testimony objected to seems to have been introduced for the purpose of inducing the jury to believe that the real defendant was a railway company, and not a city, and of arousing the possible prejudice of juries against such corporations. See also Irvine v. Cook, 15 Johns. 240; Penfield v. Car-

pender, 13 Johns. 350; Arthur v. Griswold, 55 N. Y. 400; State v. Mix, 15 Mo. 153. We do not think that any such harm could have come from the introduction of the evidence in the case at bar. In order to infer any such prejudice, we must make the assumption that juries will be purposely and wilfully disregardful of the instructions of the court, and are absolutely incompetent to measure and to figure damages. This assumption we cannot make.

Defendant also excepts to the admission of the testimony of the witness Berquist as to the value and cost of the buildings, for the reason "that the said Berquist did not live in Mt. Pleasant township, where the land was situated, and had no acquaintance therein, and nowhere showed, in his testimony, that he had any familiarity with the prices of material and labor for buildings in Mt. Pleasant township, some 20 miles from Jamestown and nearest the market of Windsor." We think there is no merit in this objection. The witness testified that he had lived, and had been engaged as a carpenter and builder for nineteen years, in Jamestown, and he is admitted to have been a man of quite extensive building experience. It is a refinement of technicality to claim that such a man was not competent to testify as to general values in a township which is only 20 miles distant from his place of residence, and from where he had been engaged in the building and carpentering business for many years.

There is, however, a more serious objection to the testimony of the witness Berquist, and one which deserves some consideration. The plaintiff Seckerson testified that "the barn was 32 ft. x 40 ft., 10-inch ship-lap. It was a *7-foot barn, and raised up 9 feet in front,* and the roof was ship-lap, and in the northeast corner I had it partitioned off for a granary about 10 feet square in the northeast corner of the barn." The witness Berquist was asked the following question: "Now, referring to the barn described by Mr. Seckerson, applying your knowledge of going prices of lumber in March, 1910, your knowledge of the cost of carpenter work and of building material generally at that time, what was the value of a barn 32 ft. by 40 ft., sided with 10-inch ship-lap, ship-lap roof, with a granary 16 feet by 16 within it in one corner, floored?" This question was objected to on the ground that it did not refer to the building in question, nor to the time set out in the pleadings. It will be noted that the description in the hypothetical question

differs somewhat from the description given by Mr. Seckerson; that in it the granary was 16 by 16 feet, while in the principal question the granary was given as being about 10 feet square; and that the hypothetical question in other particulars does not exactly conform to the original description. We do not believe that the objection, however, is well taken, or that the allowance of this question and answer is a proper ground for reversal. This question was asked and answered in connection with another which is, itself, a subject of objection by appellant, and a consideration of the questions together shows the situation quite clearly. The other question was, "Now, Mr. Berquist, making use of your knowledge of the prices of material, building material, in the month of March, 1910, and of the carpenter work necessary to construct buildings such as houses, barns, sheds, outhouses, and the like, what would be the value of a wooden building 16 by 16 feet, sided with drop siding, with floor, roofed with resawed lumber with two thicknesses of tar paper between ?" This building, when testified to by the plaintiff Seckerson in his examination in chief, was described as follows: "The house was 16 by 24,14-foot posts, five rooms, shingled roof, cellar,—a frame house throughout. It was built in 1905. The barn was built that spring, and later on, the next fall, put the addition on. That would be in 1906." It will be noticed that, as in the latter case, there is a difference between the testimony in chief and the hypothetical question. The hypothetical question did not include the cellar, did not state that the house was a frame house throughout, or that it was built in 1905. It, however, stated that it was "double-sided, tar paper between the siding, floor throughout." The objection made to the question, however, was merely that it was not confined to the pleadings, did not refer to the building in question, or to the time set out in the pleadings, and as not tending to prove the issues under the pleadings in the case. On a similar objection being made in regard to another building, and a few moments before, the following colloquy took place:

The Court: Unless it should appear in evidence that that is the size of the house in question, in my opinion it would be incompetent.

Mr. Ellsworth: The pleadings show a building of that dimensions; the evidence shows it. Mr. Carr says it is not in the pleadings; it is in the evidence.

The Court: If it is in the evidence, it has escaped my recollection.

Mr. Ellsworth: We would ask, then, that the evidence of Mr. Burger be looked up in that matter. Question repeated.

Mr. Knauf: Objected to also for the reason it does not refer to the building in question, nor to the time set out in the pleading.

The Court: The objection is overruled.

Mr. Knauf: Exception.

It can thus be seen that there was a doubt in the minds of the court and of counsel as to the exact testimony in regard to these matters, and it would seem to be only a fair rule of practice that when an objection is made to a hypothetical question merely on the ground of some variation from the facts as before testified to, that the particulars in which the variation consists should be pointed out. Unless such rule is adopted, however, a hypothetical question can rarely be asked with any degree of safety, and such seems to be, if not the universal, at any rate the general and a proper, rule. It is certainly not too much to require of an objector that he should know the reason why he objects, and that, if he knows the reason, that he should enlighten the court upon the subject. See Prosser v. Montana C. R. Co. 17 Mont. 372, 30 L.R.A. 814, 817, 43 Pac. 81; Chicago, R. I. & P. R. Co. v. Archer, 46 Neb. 907, 65 N. W. 1043; Wilkinson v. Detroit Steel & Spring Works, 73 Mich. 405, 41 N. W. 490; Howland v. Oakland Consol. Street R. Co. 110 Cal. 513, 42 Pac. 983; Rivard v. Rivard, 109 Mich. 98, 63 Am. St. Rep. 566, 66 N. W. 681; People v. Willson, 109 N. Y. 345, 16 N. E. 540; State v. Reddick, 7 Kan. 143; 8 Enc. Pl. & Pr. 163.

Objection was also made to the hypothetical question in regard to the coal shed. The witness Seckerson testified in his examination in chief that "the coal shed was 8 by 10, or 10 by 12. I don't just remember how big it was, and the closet 4 by 6, all constructed from wood with shingle roof and floor, and was built in the sping of 1905." The hypothetical question was as follows: "What would be the value at that time of a combined wood shed and water-closet, the coal shed 10 by 12, 6 feet high, the water-closet 4 by 6, made from 10-inch ship-lap, boarded rough?" The answer was $35. To this question the defendant objected for the reason that it was incompetent, irrelevant, and immaterial, no foundation having been laid for the testimony, not properly

admissible under the pleadings, and not tending to prove the issues in the case. It will be noted that the height of 6 feet was given in the hypothetical question, while no height was given in the question in chief. The water-closet was given in the question in chief as being constructed of wood, while the hypothetical question gave it as made from 10-inch ship-lap, boarded rough. The same consideration would seem to apply to this hypothetical question as to the others before mentioned. The description in the hypothetical question and in the main question was so similar that the differences, if any, could easily have been pointed out. So, too, defects in the questions could easily have been pointed out and corrected on cross-examination. 5 Enc. Ev. 612; People v. Borgetto, 99 Mich. 336, 58 N. W. 328; Hall v. Rankin, 87 Iowa, 261, 54 N. W. 217; State v. Ginger, 80 Iowa, 574, 46 N. W. 657; Meeker v. Meeker, 74 Iowa, 352, 7 Am. St. Rep. 489, 37 N. W. 773.

The objection that the testimony in regard to the values does not relate to the time of the fire is not borne out by the facts. Practically all of the questions specifically refer to such a time, and the defendant was in no way prejudiced.

Exception 6 is taken to the instructions of the court "that if this defendant set, or caused to be set, fire to the said stack of flax straw in the midst of a stubble field, such act was, in the eyes of the law, the act of setting fire to the stubble in the fields." It is argued that this instruction "infers that any setting of fire to the straw pile was setting it to the stubble, while part of the theory of the defense was that the fire which finally traveled to or reached the plaintiffs' premises was set on section 12 or section 6, and not on section 11." It is well established that, provided there is proof that the fire spreads to the stubble, such an instruction is not erroneous, and that it would be the refinement of technicality to claim that setting fire to a straw pile which in turn sets fire to stubble is not setting fire to the stubble itself. Kelley v. Anderson, 15 S. D. 107, 87 N. W. 579. When we consider the instruction as a whole, we are quite certain that the jury was not misled. A little later in the instruction the court charged that "the first important question for the jury to decide is whether the fire in the flax straw stack upon the defendant's land was the proximate cause of the conflagration which swept over and destroyed the property of

plaintiffs. It is a question of fact for you to determine from the evidence whether or not the fire from the flax straw stack spread therefrom to the stubble field and from there to the grass on the prairies and thence to the property of the plaintiffs." This paragraph of the charge made it clear to the jury that they must find that the fire from the stack spread to the stubble and to the premises of the plaintiff. There is clearly no merit in the objection of the appellant.

Nor is there any merit in his "point 9," that the court erred in not instructing the jury, at the request of the defendant, that "if the fire which burned the property of the plaintiffs originated on section 6, township 138, range 66, the plaintiffs cannot recover, even though the said fire from said section 6 may have joined the fire which was on section 12 in township 138, range 66. In other words, if the fire which burned plaintiffs' property originated on section 6 in the same township, then the plaintiffs cannot recover, and your verdict must be for the defendant. The jury is instructed that the burden of proof in these cases is upon the plaintiffs to show that the fire which burned their property—the property in question or the property of either of them—was set by the defendant to the stubble, and negligently permitted it to escape from his stubble field to the prairie, and thence to, over, and upon the land of the plaintiffs, or any of them, and destroyed the alleged property; you must find first, by a preponderance of the evidence, that the defendant set the fire in question, or, second, that he caused it to be set, and unless you so find, then the plaintiffs cannot recover, and neither of them can recover; and if you fail to find that the defendant set the fire, or caused it to be set, then you must find for the defendant, or, if you fail to find that the fire escaped from the defendant's land on said section 11, then you must find for the defendant, and the plaintiffs cannot recover. The burden of proof is upon the plaintiffs to prove, by a fair preponderance of the evidence, the allegations of their complaint, and if they fail so to do, then you must find for the defendant." The court, in its general charge, fully covered the latter part of this proposed instruction, and fully charged the jury that they must be satisfied from the evidence that the fire which destroyed the premises of the plaintiffs originated on the land of the defendant and extended to the property of the plaintiffs. Beyond this the court was not required to go. The first portion of the proposed instruction, in-

deed, does not state the law, and the refusal to give it was therefore not error. It absolutely ignores the legal fact that when the wrong of two persons jointly contributes to the injury, both of such persons are liable. The portion of it which instructed the jury that plaintiff could not recover "if the fire which burned the property of the plaintiff originated on section 6, township 138, range 66, *even though* said fire from said section 6 may have joined the fire which was on section 12," is, itself, clearly erroneous. The proposed instruction was also erroneous in that in it the court was requested to instruct the jury that the plaintiffs could not recover "unless the jury found that the fire was set by the defendant to the stubble and negligently permitted to escape from the stubble to the prairie, and thence to and over and upon the lands of the plaintiffs, or any of them, and that it destroyed the alleged property." This proposed instruction told the jury that if the defendant set the fire, he was not liable unless he negligently permitted it to escape. This is not the law. Setting fire to prairie land in the month of March renders the one who does so absolutely liable. It is not even necessary, indeed, that it should have been done with any negligence or malicious purpose. Section 2061, Rev. Codes 1905; 19 Cyc. 981; Thoburn v. Campbell, 80 Iowa, 338, 45 N. W. 759; Conn v. May, 36 Iowa, 241; Dunleavy v. Stockwell, 45 Ill. App. 230. We know that counsel contends that § 2061 does not specify straw stacks, but it does specify grass or stubble lands. To say that setting fire to a straw stack which is in the midst of stubble, and, in turn, sets fire thereto, is not setting fire to the stubble itself, is an absurdity. Kelley v. Anderson, 15 S. D. 107, 87 N. W. 579. The proposed instruction, too, failed wholly to take into consideration any liability on the part of the defendant for failure to take ordinary care to prevent the spread of the fire, even if he did not set it in the first instance. In the case of Baird v. Chambers, 15 N. D. 618, 6 L.R.A.(N.S.) 882, 125 Am. St. Rep. 620, 109 N. W. 61, we said: "After he [defendant] discovered the fire on his premises, he was bound to exercise reasonable care and diligence to prevent it from spreading so as to endanger his neighbor's property. His duty in this respect, after discovering the fire, would be the same as that resting upon a person who, without negligence, starts a fire on his own premises. He was bound to put forth such reasonable effort to prevent the fire endangering his neighbors, as a man of ordi-

nary prudence would put forth who was actuated by a proper regard for his neighbors' rights and safety."

Counsel also excepts to the refusal of the court to instruct the jury "that the real question of law involved in this action, upon which all other issues depend, is that of the liability of the defendant for the acts of others, if the testimony shows that he did not set the fire. The fact that fire is set by someone and negligently permitted to escape and spread by others, until it destroyed the plaintiff's property, presents no ground at law for holding the defendant liable. To make him liable he must have set the fire or caused it to be set, and in this action the testimony of the defendant and his witnesses was that he did neither, and if you believe their testimony you must find for the defendant. In order to hold defendant liable for the damages in these cases, it must appear by a fair preponderance of the evidence that he either set or authorized the setting of the fire which burned the plaintiffs' property and caused their losses." There was no error in refusing to give this instruction. That part of it which was material and proper was fully covered by the instructions of the court. The instructions, too, as presented by counsel, were erroneous in many particulars. It perhaps called undue attention to the testimony of the defendant, and sought to give judicial sanction thereto. It was certainly open to the objections which we have given to the instruction asked and treated under the head of exception 9.

Objection is also made to the admission of the testimony of the witness Hawkins as to the reason for not investigating the origin of the fire sooner than he did. The objection urged that the reason was immaterial, and tended to prejudice the jury, the testimony being to the effect that the witness was tired out on account of fighting the fire for over a day, etc. The answer to this question was hardly immaterial. It tended to show the general good faith on the part of the witness, and we do not believe could have worked any prejudice. The narrative record which we have before us seems to give support to the arguments of counsel for respondent that the question was brought out by the examination of the appellant himself, and was in answer to the indirect reflection upon the witness contained in a question by appellant's counsel to the witness Sinclair, when he said, "Four or five days after the fire was the first time?" though, of course, the significance of this

question would depend entirely upon the inflection of the voice, which we have no means of gathering from the printed record. We cannot say from the record, therefore, that the question or the answer was improper.

We can see no merit in appellant's "point 3," that the court erred in refusing permission to certain witnesses to testify that no burnt strip existed through the stubble between the straw bottom and the prairie immediately east. The record shows that they abundantly covered the question in the testimony that was admitted, and the questions objections objected to would merely have been cumulative.

Much less merit is there in "point No. 4." The question may have called for hearsay evidence, and may not have been limited as to time, but as it was answered "no," no harm could possibly have been done.

Neither is there any merit in "point 5" as to the testimony in rebuttal of the witness Gilbert and Rankenin. Objection is made that this testimony was not proper rebuttal testimony, and that the time was not specified. We are perfectly satisfied that no material error was committed in relation thereto.

Objection is also made, in "point 7," to a portion of the charge in which the court said: "On the other hand, the defendant has produced a number of witnesses who have in some instances squarely contradicted the evidence produced by the plaintiffs. This conflict of evidence it is your duty to harmonize in the light of the evidence and circumstances in the case. The fact that one witness squarely contradicts another on a certain point does not necessarily nullify the evidence upon that point, but the means of knowing the facts testified to by certain witnesses could be such as to convince you that such witness is telling the truth, while the other has testified falsely." The objection is that if the evidence was squarely contradicted it would be impossible to harmonize it. There is technical merit in this objection, but none which is worthy of any consideration. We are quite sure that the jury knew what the court meant. We prefer to adopt the latter conclusion.

We now come to appellant's "point 8," which was to the effect that the court erred in instructing the jury that "if you find in favor of the plaintiff Burger, then you should fix his damages at such sum as you find from the evidence he is entitled to receive as the value of the property so destroyed, and for interest on such amount as you find from

March 23, 1910, at 7 per cent per annum; and if you find for the plaintiffs Seckerson and Hawkins, then your verdict should be found in the same manner. But if you find that the plaintiffs are not entitled to recover, then your verdict should be for the defendant." This instruction was erroneous. The statutes and decisions of this state all hold that in tort actions the awarding of interest shall be *discretionary* with the jury, and not mandatory upon them. Section 6560, Rev. Codes 1905; Johnson v. Northern P. R. Co. 1 N. D. 354, 48 N. W. 227.

Appellant contends, we know, that the point should have been specifically pointed out on a motion for a new trial in the court below. This, however, we do not deem to be the law, and, though it would have been well to have done so, it was not necessary in order to save the point. See Hedderich v. Hedderich, 18 N. D. 488, 123 N. W. 276.

The plaintiff, therefore, at his option, may apply to the district court within thirty days from the handing down of the remittitur herein, and have the judgment modified by entering a judgment for the sum of $1,528.73, with costs and disbursements, and interest thereon from the date of the verdict, but from the date of the verdict alone; otherwise, a new trial will be granted. Each party will pay his own costs and disbursements upon this appeal.